Good morning and may it please the court. Eliodoro Moreno Jr. for the petitioner Manprit Singh. At the very minimum, this court must remand this case back to the board because the immigration judge and the BIA failed to consider the January 2004 threats against Mr. Singh by the Congress Party members in its cumulative analysis of whether the harm suffered by Mr. Singh in India rises to the level of persecution. Could you help me out on that? All through the brief, you talk about the Congress Party as if it were some sort of an organized persecution team that was after this man Singh, of whom we have had about probably a thousand Singhs from Punjab in here with these cases, so we know a little bit about the country. Now, the Congress Party is, as I understand it, is just another political party like the Republicans and the Democrats that run the country. And what part of the Congress Party is it that Mr. Singh is afraid of? Well, Mr. Singh is afraid of the Congress Party as a whole primarily because Congress Party members particularly singled him out for persecution and persecuted him because of his political opinion, which was, as a member of the Kali Dalman political party, which is in opposition to the beliefs of the Congress Party. And they constantly persecuted him because they wanted him not only to stop his activities But did they see him as his party designated as a terrorist or an anti-government group, or were they just opposition to it? They were just opposition, Your Honor. They're espousing certain ideas, political ideas that the Congress Party does not agree with, and for that reason is why they persecuted Mr. Singh, simply because of his political activities in support of this party and because his refusal to leave that party. Now, as it is Let's go back to your first point. You suggest that because they didn't discuss this January 2004 incident where they came to his mother, that that somehow says that this is not a valid determination. What's your best case for that idea? I mean, the bottom line is they've discussed the other incidents. They discussed the 2001 incident. They discussed the February 2002. They discussed the June 2003 incident. In each one of those, they said he's not injured at all, he's not arrested, and they can't determine what happened in June of 2003, and they don't discuss January 2004. So what is your best case for the idea they've got to discuss it? Well, Your Honor, I mean, my bottom line is I don't find a case that says they've got to discuss every incident he comes up with. Well, in those terms, no, Your Honor, but So there isn't a case that says they've got to discuss everything that comes up with it. Well, they have to consider all the evidence that he presents. Well, they do have to consider all the evidence, but I guess that's the worry that I have. His evidence is that he was going to be hurt, but their decision is not based on that. They, in fact, said we'll give him credibility. They gave him credibility. And they said, hey, the policemen didn't do anything to you. They didn't do a thing to you. It's just like a lot of cases we've had go along here, and we didn't give them any help because there wasn't anything done. The best part that they could come up with, with having something done,  And then his friends come and tell him that these six people are somehow part of the Congress Party. And he says, they said, where's your corroborating evidence about this? Just because you come in here and tell us your friends say that, that doesn't make it so. And what did he say? Well, Your Honor, He said, I'll bring you some corroborating evidence. Did he ever do it? And the court didn't give him the opportunity. Did he ever do it? No, Your Honor. However, the court never gave him an opportunity to do so. In addition to my first point, this court must also remand to the board because the immigration judge and the BIA failed to consider the June 2003 attack in its cumulative analysis as well. The IJ and the BIA I don't know whether you can really argue that. They gave him credibility. They looked at it. They went through it and they tried to decide whether they could really believe it. And they said, hey, these are friends who come in and say this. They heard it from members of a village. And they said, where's your corroborating evidence of that? We want something to prove it. And he says, I'll bring it in. Well, Your Honor, the immigration judge erred in that analysis because the immigration judge found that the testimony of Mr. Singh regarding the perpetrators of the attack and the people that and the reason for the attack was mere speculation. And that's not what occurs here. Well, but basically what they were saying is, we'll make you a credible witness. And we'll believe what you say. But we're not going to just take it because you get it from 40 friends out there in the country that they tell you this, that that makes it so. What you know, you've told us and you've told it right. But bottom line is, you've got to have something to tell us that we can have some confidence in, not just speculation friends telling you. In other words, we're not going to buy all this hearsay stuff. And he never brought it in. Well, Your Honor, the Petitioner would disagree with that characterization. What did he ever bring it in? Well, that the immigration judge made a finding that his credible testimony alone wasn't sufficient to meet his burden of proof on nexus as to the June 2003 attack. But under the Real ID Act and Wren v. Holder, the immigration judge is then required to inform the respondent that his credible testimony is insufficient and that corroboration would be needed. But the immigration judge never informed the respondent of that. So if we are not sure whether Wren is really the law, should we hold this until we determine whether it is? Well, Your Honor, Wren is the law as of today. It's subject to review under Ashodi right now. There's an embanked proceeding pending in Ashodi. Isn't that correct? Yes, Your Honor. And if the en banc, the decision to rehear en banc decided that that case would not be present as of now, then that would be something that it would be appropriate for the Court to hold on to see if Wren v. Holder is the law. Well, my concern is that I think you may be over-reading even the Wren case here. The I.J. simply said, as I read the record, you haven't met your burden of proof. Do you have anything more to offer? That's not calling for corroborating evidence in the sense that the Wren case required. Is there? Well, Your Honor, the immigration judge, as soon as the immigration judge at page 81 of the administrative record in the Court's decision specifically indicated that the Respondent did not provide any other objective evidence. That, in our estimation, is requiring corroboration, but the I.J. never informed. That's pretty indirect, isn't it? That's not what Wren says, is it? Well, Wren indicates that when the judge believes that the credible testimony is insufficient and that in order to meet a certain part of its burden of proof that the immigration – and the immigration judge believes that that could be done by corroborating evidence, it must inform the alien of that need and give them a reasonable amount of time to provide that corroborating evidence. The immigration judge's decision at page 81 in the administrative record indicates that the immigration judge believed that corroborating evidence was necessary but never informed Mr. Singh of that need or gave him an opportunity to provide that evidence. On cross-examination, which makes it even more egregious, is that on cross-examination he stated that he could provide that corroborating evidence. But did he have a lawyer at his hearing? He did, Your Honor. Did the lawyer sleep through this question of corroboration? Well, the immigration judge never expressed concern that his credible testimony alone wouldn't be sufficient to meet his burden of proof. Therefore, there really didn't seem to be the need to provide any more additional evidence until the immigration judge informed the alien or Mr. Singh that he needed additional evidence to corroborate the issue of nexus regarding the June 2003 attack. What town did Singh live in? Oh, Your Honor. He went to the police in some wherever he lived. And I was wondering if there was any evidence about how that town was divided between the Congress-favoring people and the Cali-Dalman people. Your Honor, that I can recall, there's nothing in the record that would speak to how the – I'm assuming the Court's requesting how political power was divided. I'm trying to find out, get some understanding of what the corroboration would be about his story if he brought them in, if he had brought in some evidence. Well, yes, Your Honor. He specifically spoke to, or it seems like his testimony, and this would be at page 148 of the administrative record, he speaks of corroborating evidence in the form of affidavits from the individuals who made these statements. And that would become particularly relevant here because Mr. Singh did not particularly know how the individuals who told him learned about what the Congress party members had said. Thank you very much, counsel. Your time has expired. Yes. We'll hear from the Governor. Ms. Curlin. May it please the Court, my name is Elizabeth Curlin, and I represent the United States Attorney General, who is the respondent in this case. The evidence here does not compel the Court to disagree with the immigration judge and board's determination that Petitioner had not established past persecution or a well-founded connection with the immigration judge. Moreover, even if the Court were to disagree with the agency's evaluation of the facts in this case, it would still not be compelled to overturn the board's decision under the highly deferential substantial evidence standard of review. I'd like to first address Petitioner's last-minute 28J letter. Since Wren deals with the issue of corroboration and not hearsay evidence, it does not support Petitioner's argument, which was that the agency disregarded, as hearsay, his testimony about who caused the motorcycle accident. Are you really suggesting that reading the record, looking at what happened in this particular incident, that this IJ and the BIA thereafter was not looking for some corroborating evidence? No. The basis of what the ---- Now, just a minute. Based on the testimony, based on the questions asked, can you, the government, really say that the IJ and the BIA thereafter was not looking for corroborating evidence? I mean, I read the record. I read what it said. And it seemed to me that what they said was, we don't know who those six people are. We know what you've said. We know what you've said is hearsay. What do you have that will help us to know that what you're saying is true? Now, why isn't that corroborating evidence? Well, it may or it may not be in the case in this situation. May or may not be. Why isn't it? It may or may not be, because what has happened here is that Petitioner, based on the immigration judge and board's decision, as saying, you've presented this evidence, but it's speculative, and therefore, without further documentation, we cannot determine whether there's ---- Which is what? What is documentation? It could be corroboration. But again, Your Honor, that issue ---- I don't know what it is if it isn't. But again, Your Honor, that issue ---- What is it if it isn't corroboration? It could or it could not be. But again, Your Honor, the issue ---- That is involved with ---- I mean, you're not answering my question. If he's got to provide further documentation, what is it if it is not corroborating evidence that they're requesting? What's the other thing they could be requesting? It could be his testimony that someone saw the individuals who caused the accident. It could be his testimony that it could have been some possible that he may have seen the license plate. It could have been some other thing. But again, Your Honor, if the issue that we're talking about is Wren and whether corrob ---- the corroboration rule of Wren applies, Petitioner did not raise that issue, and he's abandoned that claim by not discussing it in his opening brief. His argument is very different. It's regarding that his argument was that the ---- His opening brief did not suggest that, Your Honor. Both his opening brief and his supply ---- his reply brief specifically stated that the agency erred in disregarding his testimony as hearsay, that because they ---- that ---- and that goes to the probative value or the weight that the immigration judge placed on his testimony. Because it ---- and Wren is inapplicable and doesn't support Petitioner's contention because the issue here ---- the issue in Wren was the situation of where ---- whether when an alien fails to present any evidence. Petitioner here did present evidence, and the immigration judge did consider it. The immigration judge, in fact, discussed the mother's affidavit. Now, just a minute. I'm not sure I really buy what you just tried to get me to swallow. Wren was not about the Petitioner not presenting any evidence. Wren was about the evidence the Petitioner presented and thereafter was cross-examined about. He was supposed to bring corroborating evidence, and he didn't, and therefore the I.J. said, you didn't bring it to the hearing, it's not with you, we're throwing you out of here. And the BIA said, fine. And we said, no, you've got to tell the Petitioner before he gets there that he has to have the corroborating evidence. It's not a matter of simply suggesting that he's going to have it when he gets there. You've got to give him some notice. So, again, we're at a situation where we have a young man who says six people beat him up. His best evidence about who they are is not him because he doesn't know. It's that he lives in a little place like my hometown where everybody knows everybody and everybody talks and everybody says, oh, it was the government who did this. And the I.J. says, well, that's not enough. I need more. I need some corroboration. That's what he's saying. What else could he be saying? He can't. I mean, every evidence you've even talked about here is corroboration. That's the definition of corroboration. Again, Your Honor, the corroboration that we're discussing is the idea that in evaluating the evidence that he did provide. They said he was credible. Everything he says is true. And his credibility is not at issue. What is at issue here is whether there was enough evidence to support the agency's conclusion that there was no nexus. And under the circumstances with regard to that discreet fact of the motorcycle accident, there was enough evidence in the record for the immigration judge to conclude that it was speculation on Petitioner's part that there did not establish the required nexus for asylum. If he says Petitioner is credible, and Petitioner says, my friends told me, based on what we know in the village and based on what we know happens in our village and what everybody knows about, that these are Congress people, and he's credible about that, how can he say that has no weight except to say, I can't believe that because I don't have any corroboration? The immigration judge did not say that it didn't have weight. The immigration judge actually used that, what Petitioner had recounted, to say that it was he was the judge was sympathetic to those facts, creating a subjective, valid belief in Petitioner, on Petitioner's part, that he could, he was targeted. But in the end, it was within the agency's power to evaluate that and find that evidence not sufficient to establish. And on the standard of the verdict. For a credible witness to say what he said, what you're really arguing to me is a credible witness can give me all of this, but I can say, even though credible, it does not make any difference to me, without saying, bring me some more evidence to corroborate what you say, because at this point, it's speculation. Again, Your Honor, I do not think corroboration was not something that Petitioner argued before this Court. I don't know whether he raised it in his opening brief. I'm talking about the issue, if raised. If it was raised, then that would be an issue that we would address. But if the Court feels that, if the Court would like to excuse Petitioner's abandonment of that issue, then we would like the opportunity to submit a supplemental brief. And in any case, the Court's decision in Oshodi appears to find that Wren, Wren's corroboration holding was dicta. And so, therefore, we should await. Kennedy. Would the government be prejudiced in any way if we defer submission and wait to see how Wren works out and if it goes embank and establishes any new law in this area? The Court, no, we would not be prejudiced if we were allowed to submit a supplemental brief on the issue of corroboration. We never ask you why you need a supplemental brief or why even what the Petitioner has raised is important. Because the BIA says right here, the Respondent's belief that this was an intentional act carried out by members of the opposing political party is speculative, and these are the important words. And the Respondent provided no corroboration to support his belief. Again, Your Honor, that is Petitioner's burden to prove. And in this case, he didn't, and he never raised that issue on his argument to the Court. I see that my time has run out. May I close? Yes, you may close. Thank you. Given that the issue in this case is whether there was enough evidence to support the agency's decision, the Court should not be compelled to overturn or disagree with the agency's conclusion that Petitioner had not established his eligibility for relief or protection. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision.
judges: Goodwin, O'scannlain, Smith